IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PENNY JO QUINNELL,

                                                              OPINION AND ORDER

                    Plaintiff,

                                                  14-cv-601-bbc

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Penny Jo Quinnell is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying her claim for disability insurance benefits under the Social Security Act.  42 U.S.C. § 405(g).  The administrative law judge who decided the case concluded that plaintiff suffered from the severe impairments of fibromyalgia, degenerative disc disease, osteoarthritis, diabetes, obesity, depression and anxiety disorder but retained the residual functional capacity to perform limited sedentary work.  Relying on vocational expert testimony, the administrative law judge determined that there were a significant number of jobs in the national economy that plaintiff could perform, including work as a receptionist, office clerk and records clerk.

Plaintiff contends that the administrative law judge erred in four respects: (1) he gave an incorrect reason for rejecting the findings of an examining physician, Dr. Steven Kirkhorn; (2) he ignored the opinion of plaintiff's treating physician, Dr. Andrea Peterson;

1

(3) he failed to account properly for plaintiff's moderate limitations in concentration, persistence and pace in the residual functional capacity assessment and his hypothetical question to the vocational expert; and (4) he relied on unsupported vocational expert testimony regarding the number of jobs available to plaintiff.

Because the record supports at least two of plaintiff's contentions, the case must be reversed and remanded for further consideration.  The administrative law judge incorrectly determined that Dr. Kirkhorn did not make any objective clinical findings in support of his opinion.  He also presented a hypothetical question to the vocational expert that was inconsistent with the concentration, persistence and pace limitations stated in the residual functional capacity assessment.  Although plaintiff's other contentions may not require reversal and remand on their own, the administrative law judge should assess Dr. Peterson's full opinion and the weight it should be given; identify plaintiff's specific functional limitations in the area of concentration, persistence and pace; and further develop the record regarding the basis for the vocational expert's testimony about job numbers.


OPINION

A.  <u>Procedural Background</u>

The administrative law judge held an initial hearing in this case on October 18, 2011, AR 118-40, and issued a written decision on November 17, 2011.  AR 189-210.  Plaintiff appealed the decision to the Appeals Council, which remanded the case and directed the administrative law judge to obtain additional evidence of plaintiff's visual impairments, give

further consideration to the opinion of treating physician Dr. Wogahn and obtain additional evidence from medical and vocational experts if necessary.  AR 22.  The administrative law judge held a second hearing on April 2, 2013, at which plaintiff, a medical expert and a vocational expert testified.  AR 141-84.  On May 3, 2013, he issued his second written opinion, incorporating by reference statements from his 2011 decision "concerning the pertinent provisions of the Social Security Act" and "the pertinent [evidentiary] facts. . . as modified or supplemented."  AR 22.  However, the administrative law judge wrote that "the undersigned does not adopt the inferences and findings in [the 2011] decision, which are not consistent with the conclusions" reached in the later decision.  Id.

## B.  Physicians' Opinions

Regardless of its source, the commissioner must evaluate every medical opinion in the record and decide what weight to give it.  20 C.F.R. § 404.1527(c).  More weight is given to opinions from sources who have examined the plaintiff than to opinions from non-examining sources.  § 404.1527(c)(1).  An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in record; the contradictory opinion of a non-examining physician does not suffice.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  If the opinion is from a treating physician, it is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004).

3

Although an administrative law judge is not required to afford a treating physician's opinion controlling weight, he must provide a sound explanation for rejecting it. Roddy, 705 F.3d at 636. See also Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor."). Other factors the administrative law judge should consider in determining the weight to give opinion evidence are the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. § 404.1527(c)(3)-(6).

1. Dr. Kirkhorn

Dr. Kirkhorn is an occupational medicine specialist who evaluated plaintiff on February 29, 2012 at the request of one of plaintiff's treating physicians, Dr. Timothy Wogahn. AR 1630-34. After reviewing plaintiff's history and examining her, Dr. Kirkhorn assessed fibromyalgia, moderate obesity, sciatica resulting from probable degenerative disc disease, a potential meniscal injury to her left knee and osteoarthritis in her right knee and thumb. AR 1634. He wrote that plaintiff did not appear to be "competitively employable," would likely miss work on a regular basis, have intolerance to repetitive tasks and was permanently restricted to limited sedentary work of no more than four hours a day and 20 hours a week. Id.

4

The administrative law judge rejected Dr. Kirkhorn's opinion because the doctor "did not document any clinical signs or other objective evidence of abnormality." AR 30. The administrative law judge explained that Dr. Kirkhorn only documented plaintiff's subjective complaints and "[t]here is no evidence of any actual medical evaluation." Id. According to the administrative law judge, "[t]he opinion does not make the link between complaints and medical evidence, it only states what the claimant has told him." Id.

As plaintiff points out, the administrative law judge was incorrect. Although Dr. Kirkhorn noted plaintiff's subjective complaints, he also reviewed her magnetic resonance imaging studies from 2007 and 2008 and physically examined her, measuring her tender points, observing her gait and range of motion and testing her reflexes. AR 1633. He noted that she had an antalgic gait with pes planus (meaning that she walked with pain and was flatfooted), was diffusely tender at multiple points, had a somewhat limited but adequate overall range of motion and experienced pain with straight leg raising. Id. He also noted that her imaging studies showed various abnormalities, including some stenosis, herniation and degenerative disease. Id. In omitting any discussion of these aspects of Dr. Kirkhorn's opinion, the administrative law judge erred in his assessment of the doctor's opinion.

Defendant argues that the administrative law judge's error was harmless because other medical opinions support his finding that plaintiff is capable of full-time, sedentary work. I disagree. When examining and consulting physicians present conflicting evidence, the administrative law judge may decide which doctor to believe, so long as substantial evidence supports that decision. Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001); Books

5

v. Chater, 91 F.3d 972, 979 (7th Cir. 1996).  However, in this case, the administrative law judge reached his opinion under the misapprehension that Dr. Kirkhorn's opinion was not supported by objective clinical findings.   It is impossible to know how he would have weighed the medical opinions had he given proper consideration to Dr. Kirkhorn's objective findings.   McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011) ("[H]armless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation."); Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010) ("[T]he fact that the administrative law judge . . . might have reached the same result does not prove that her failure to consider the evidence was harmless.   Had she considered it carefully, she might well have reached a different conclusion."); Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006) (error is harmless only if it would be inconceivable for trier of fact to have made a different finding).  As a result, I must remand this case.

2.  Dr. Andrea Peterson

Plaintiff contends that the administrative law judge ignored Dr. Peterson's 2008 opinion that she could not perform full-time work.  The administrative law judge did not address Dr. Peterson's opinion in his 2013 decision.  However, as argued by defendant, the 2013 decision incorporated by reference the evidentiary facts from his 2011 decision, in which he noted the following:

> [I]n February 2008 her doctor, Andrea Peterson, D.O., indicated that the claimant did not really have any work restrictions, but that she [may] need a

"more sedentary job."  The claimant then complained that she needed to [lie] down and ice her back every 2 hours.  Dr. Peterson then issues a functional capacity evaluation placing the claimant in a light work category with some postural limitations and a sit/stand option.

*       *       *

These opinions are given some weight, but, as noted earlier, there is no objective support or correlation for the claimant needing a sit/stand option, significant postural limitations, or sitting [lying] restrictions.   She has demonstrated her ability to perform those movements, and she has not had abnormalities on examination to support her subjective complaints.

AR 201 (citing AR 571).

In her reply brief, plaintiff does not dispute the fact that the administrative law judge discussed Dr. Peterson's opinion in the 2011 decision.  However, she continues to argue that the administrative law judge failed to acknowledge that Dr. Peterson found her incapable of sustaining full-time work.  Ptf.'s Reply Br., dkt. #18 at 6.

The medical record shows that plaintiff was not working when Dr. Peterson began treating her myofascial pain in October 2007.  AR 564.  On December 3, 2007, Dr. Peterson recommended that she remain off work while she underwent two more months of physical therapy.  AR 570.  On February 11, 2008, Dr. Peterson noted that plaintiff was making progress but needed an additional two months of physical therapy.  AR 571.  She wrote that

The patient does not feel she can return to work at this point as she feels the need to lay down about very two hours to ice her back.  I explained to the patient that the longer she remains off work the less likely it is that she will return to any type of work.  . . . The patient may need to work with the Department of Vocational Rehab to get retrained in a job that is more sedentary.

Id.

By April 2008, plaintiff had developed knee and leg pain that delayed her progress in physical therapy for several months.  AR 573-78.  Dr. Peterson performed a functional capacity evaluation on July 28, 2008, in which she made three seemingly contradictory statements:  (1) plaintiff "should be able to return to a similar line of work as her previous employment," AR 1161, which was at the medium exertional level, AR 202; and (2) plaintiff's restrictions would prohibit her from "performing a physically taxing job as well as a sedentary job that does not allow patient to frequently change positions," AR 1162; and (3) plaintiff "would also benefit from starting off part time to build her tolerance of work based activities."  Id.  (Plaintiff incorrectly states that the assessment was completed in October 2008.)

Contrary to plaintiff's assertion, Dr. Peterson did not state that plaintiff was incapable of full-time work; she seems to have believed that plaintiff could perform limited sedentary work after she built her tolerance to full-time hours.  Although the administrative law judge did not ignore Dr. Peterson's opinion completely, he did state incorrectly that Peterson had found plaintiff capable of performing light work and he failed to take into consideration all of her opinions concerning plaintiff's limitations.  Therefore, on remand, the administrative law judge should take care to summarize Dr. Peterson's findings accurately and consider the proper weight to give them in light of the full medical record.

C.  <u>Concentration, Persistence and Pace</u>

At step three of the familiar five-step sequential evaluation process, the administrative law judge considered whether plaintiff had a mental impairment or combination of mental impairments that met or medically equaled 12.04 (affective disorders) and 12.06 (anxiety related disorders) of the Listing of Impairments.  In evaluating the paragraph B criteria for those listings, he found that plaintiff had *moderate* difficulties in maintaining concentration, persistence *or* pace.  AR 26, 196.  The administrative law judge then proceeded to step four and found as part of his residual functional capacity assessment that plaintiff was "available for simple, routine, and repetitive work"; "able to understand, remember, and carry out simple instructions"; and "able to maintain concentration persistence, *and* pace at a *moderate* level."  AR 27 (emphases added).  (His use of the word "and" in this assessment suggests that he believes that plaintiff has limitations in all three areas.)  However, the administrative law judge's hypothetical question to the vocational expert included a slightly different rating of plaintiff's limitations in this area:

> Again, she is able to understand, carry out and remember simple instructions. She is able to maintain concentration, persistence and pace at a *mild to moderate* level.  She is able to complete mild to moderately complex tasks, with no hypervigilance the provision [sic] required.

AR 184 (emphases added).

The administrative law judge did not identify the source of his residual functional capacity finding regarding concentration, persistence and pace or explain why he presented a less restrictive limitation to the vocational expert.  The record also contains inconsistencies regarding the severity of plaintiff's limitations in this area.  The medical expert testified that

9

plaintiff had mild to moderate limitations in concentration, persistence and pace, AR 179, but the state agency physician noted on a mental residual functional capacity form that plaintiff had moderate limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual and the ability to complete a normal workday and workweek without interruption and to perform at a consistent pace without an unreasonable number and length of rest periods.  AR 1256-57.  (He did not further explain these particular findings in the narrative section of the form apart from stating that plaintiff was capable of unskilled work.  AR 1258.).  In any event, as plaintiff argues, the unexplained inconsistency between the residual functional capacity assessment and the hypothetical question is an error requiring remand for further proceedings.  Young v. Barnhart, 362 F.3d 995, 1005 (7th Cir. 2004) ("When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include *all* of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand."); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002) ("Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record.").  The vocational expert may have reached a different conclusion had she understood that plaintiff had more severe limitations than those described in the hypothetical question.

Plaintiff also criticizes the administrative law judge for failing to translate his findings of "moderate limitations in concentration, persistence and pace" into a more detailed assessment of her functional capacity.   As an example, she points out that some

administrative law judges and vocational experts have translated moderate limitations in concentration, persistence and pace into a percentage of the workday the plaintiff would be "off task." Ptf.'s Br., dkt. #13 at 25-27. Without further explanation, an administrative law judge's finding at step three that plaintiff has moderate limitations in concentration, persistence and pace says little about the nature and degree of plaintiff's difficulties. Social Security Ruling 96-8p, at *4 ("limitations identified in the 'paragraph B' and 'paragraph C' criteria are not [a residential functional capacity] assessment"); Bloomer v. Colvin, 2013 WL 5539412, at *6 (E.D. Wis. Oct. 8, 2013) (noting same).

Plaintiff cites a number of cases in which the Court of Appeals for the Seventh Circuit has held that phrases like "simple, routine work" is not synonymous with "concentration, persistence and pace" and that a hypothetical question confining a hypothetical worker to "routine, repetitive tasks with simple instructions" is not an adequate substitute for orienting the vocational expert to the totality of the claimant's limitations. E.g., O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010) ("[E]mploying terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace"); Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider plaintiff's difficulties with memory, concentration or mood swings); Young v. Barnhart, (7th Cir. 2004) (restricting hypothetical to simple, routine tasks that do not require constant interactions with coworkers or public does not account for limitations of concentration, persistence or pace). Plaintiff is correct that these cases establish that the

11

administrative law judge's use of the phrases "simple, routine, and repetitive work" and "able to understand, remember, and carry out simple instructions" in his residual functional capacity assessment are not adequate descriptions of her moderate limitations in concentration, persistence and pace.  However, the question in this case is whether the administrative law judge may simply state in the residual functional capacity assessment that plaintiff has "moderate limitations in concentration, persistence and pace" and not specifically identify her functional limitations in this broad area.

The cited cases suggest that simply using the phrase "moderate limitations in concentration, persistence and pace" is sufficient.  E.g., O'Connor-Spinner, 627 F.3d at 620-21 ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical. . .").  However, SSR 96-8p, at *4 says otherwise: ["a residual functional capacity assessment] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C."  Further, in a more recent case, the Court of Appeals for the Seventh Circuit stated that "[a]lthough it is not necessary that the ALJ use this precise terminology ('concentration, persistence and pace'), we will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record."  Yurt v. Colvin, 758 F.3d 850, 857 (7th Cir. 2014).  The court stressed that merely reciting the state agency physician's finding that plaintiff was capable of "simple, unskilled work" was not a proper substitute for detailing the plaintiff's moderate limitations in the ability to carry out detailed instructions, perform within a schedule, be punctual, perform at a consistent pace and complete a normal workday

12

and workweek.  Id. at 857-58.  Although it is not clear from Yurt whether it is reversible error for an administrative law judge to fail to articulate the specific functional limitations a claimant has within the broad category of "concentration, persistence and pace," it is clearly good practice to do so.  Therefore, on remand, the administrative law judge should take care to identify plaintiff's specific concentration, persistence and pace limitations in the residual functional capacity assessment and the hypothetical question.

## D.  Vocational Expert Testimony

Plaintiff questions the reliability of the vocational expert's testimony regarding the number of jobs available to her in the state economy.  At the hearing, the vocational expert testified that she was identifying "[e]xamples of such work — and the labor statistics that I have are specific to Wisconsin."  AR 184.  The administrative law judge did not question the vocational expert about the source of the labor statistics that she relied on.  As plaintiff points out, the Court of Appeals for the Seventh Circuit has held that "[w]e have no idea what the source or accuracy [is] of the number of jobs that vocational experts . . . claim that plaintiff could perform that exist in plaintiff's area, the region, or the nation."  Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014).  "There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy."  Id.  See also Voigt v. Colvin, 781 F.3d 871, 879 (7th Cir. 2015)

13

(Dictionary "does not contain information on which to base an estimate of the number of available of jobs of a particular kind"); Herrmann v. Colvin, 772 F.3d 1110, 1113-14 (7th Cir. 2014) (although vocational experts normally rely on Occupational Employment Quarterly for job numbers, those statistics are census data identifying jobs in broader job categories than Dictionary's narrower categories, making any estimate based on those statistics arbitrary).

Although the court of appeals has not found that such errors would support reversal and remand on their own, it has instructed administrative law judges to further develop the record with respect to this issue when the case is on remand for other reasons.  Therefore, if a new hearing is held on remand, the administrative law judge should question the vocational expert more thoroughly about the basis of the expert's opinion regarding the number of jobs that plaintiff might be able to perform.


ORDER

IT IS ORDERED that plaintiff Penny Jo Quinnell's motion for summary judgment, dkt. #12, is GRANTED.  The decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g).  The clerk of court is directed to

enter judgment in favor of plaintiff and close this case.

Entered this 18th day of May, 2015.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge